IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 2:11-CR-44-RWS-SSC |
| RAY H. ADAMS | : | |
| SAMUEL J. CRUMP | | |

GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT ADAMS' MOTIONS TO DISMISS SUPERSEDING INDICTMENT

COMES NOW the United States of America, by Sally Quillian Yates, United States Attorney for the Northern District of Georgia, Jeffrey A. Brown and William L. McKinnon Jr., Assistant United States Attorneys, and files this Response respectfully moves this Court to deny defendant Ray H. ADAMS' motion to dismiss superseding indictment, or in alternative, to dismiss Count Two of the superseding indictment (Doc. No. 198) and the Amended motion to dismiss (Doc. No. 202). The government did not engage in any unnecessary delay in presenting the superseding indictment nor is either defendant prejudiced by the superseding indictment. In addition, Count Two of the superseding indictment, charging ADAMS and CRUMP with possession of a biological toxin, in the form of castor beans, for use as a weapon in violation of 18 U.S.C. §175(a), is not unconstitutionally vague as charged in Count Two and such a charge was envisioned by Congress.

Background

On November 4, 2012, a federal grand jury in the Northern District of Georgia returned an indictment against the defendants, FREDERICK W. THOMAS, EMORY DAN ROBERTS, SAMUEL J. CRUMP and RAY H. ADAMS in which it charged Defendants CRUMP and

1

ADAMS in Count Three with conspiring to possess and produce the biological toxin Ricin in violation of Title 18, United States Code, Section 175(a) and in Count Four with violating § 175(a) aiding and abetting each other in the attempted production of the biological toxin Ricin. (Doc. 8). On December 10, 2013, a federal grand jury returned a superseding indictment against Defendants ADAMS and CRUMP, charging them in Count One with conspiring to possess and produce the biological toxin Ricin in violation of Title 18, United States Code, Section 175(a), Count Two with possessing the biological toxin Ricin, in its naturally occurring form, castor beans, for use as a weapon and ADAMS in Count Three with attempted production of the biological toxin Ricin for use as a weapon in violation of § 175(a). (Doc. 182).

Background on Ricin

Ricin is a deadly toxin that naturally occurs in castor beans. *See, e.g.,* Gregory P. Wedin et al., *Castor Bean Poisoning,* 4 Amer. J. Of Emerg. Med. 259, 260 (1986) ("Ricin, the toxic protein found within the castor bean, is one of the most potent toxins known."); Dana A. Shea et al., *Ricin: Technical Background and Potential Role in Terrorism,* Congressional Research Service Report 7-5700 at 1 (2010) ("Ricin is a potent plant toxin found in the seeds of the castor plant *(Ricinus communis).").* Although castor seeds are commonly referred to as "beans," the so-called beans are in fact the seeds of the castor plant.

Ricin is derived from the castor bean plant "and is considered to be the second most deadly toxin known to man; a toxin for which there is no known antidote . . . When inhaled or ingested, in even a tiny amount, ricin dust is typically fatal. Equally as disconcerting, ricin is virtually impossible to trace as a cause of death." *United States v. Leahy*, 169 F.3d 433, 436 (7th Cir.1999); *see also United States v. Baker*, 98 F.3d 330, 333 (8th Cir.1996) (citing witness testimony that "0.7 gram of 5% pure ricin ... was enough to kill 126 people").

Ricin in its naturally occurring state, castor beans, is highly toxic. The ingestion of about five castor beans can be lethal. Wedin et al., at 260. The toxic effects of ingesting castor beans include "nausea, headache, general malaise, somnolence, loss of consciousness, convulsions, bloody diarrhea with tenesmus, dehydration, thirst, cyanosis, tachycardia, hypotension, electrocardiographic (ECG) changes, exanthema, liver necrosis, nephritis, proteinuria, optic nerve lesion, and mydriasis." *Id.* at 261.

Ricin may also be isolated from the castor bean by removing the hull of the castor seed, to extract a colorless and odorless powder. The resulting substance is highly toxic. "Recipes" for extracting ricin from castor beans is readily available online. A recent Congressional report notes that "several recipes for extracting ricin from castor beans are available on the internet and from commercial bookstores." *See* Congressional Research Service Report, "Ricin: Technical Background and Potential in Terrorism," December 21, 2010.

Argument

A. <u>The Superseding Indictment does not Prejudice Defendants ADAMS and CRUMP</u>

The superseding indictment returned on December 10, 2013, does not unfairly prejudice the Defendants in this case and was not obtained to harass the Defendants or out of prosecutorial vindictiveness. "A prosecutor may seek a superseding indictment at any time prior to trial on the merits" so long as the purpose is not to harass the defendant. *United States v. Edwards*, 777 F.2d 644, 649 (11th Cir. 1985). A superseding indictment may be found to violate the due process clause if it the prosecutor obtained new charges out of vindictiveness. *United States v. Spence*, 719 F.2d 358, 361 (11th Cir. 1983). Vindictiveness in this context means the desire to punish a person for exercising his rights. *United States v. Goodwin,* 457 U.S. 368, 372 (1982).

Here, the government presented a superseding indictment based on newly obtained evidence and did not act with any vindictiveness or intent to harass the Defendants. The Defendants were advised as early as July 2013 that the government intended to present a superseding indictment based on pending scientific testing. The government did not receive final testing results regarding the presence of ricin in the items seized from ADAMS until October 29, 2013. In addition, pursuant to the United States Attorney's Manual, the United States Attorney's Office required the Department of Justice's National Security Division's approval before presenting a superseding indictment. Such approval was predicated on the return of positive ricin test results.

B. <u>Count Two of the superseding indictment is not unconstitutionally vague</u>

1. *The superseding indictment plainly charges CRUMP and ADAMS with possession of ricin in its naturally occurring environment.*

Count Two of the superseding indictment charges CRUMP and ADAMS with violating Section 175(a) by alleging that the defendants possessed ricin in its naturally occurring form, castor beans. The superseding indictment states that CRUMP and ADAMS "did knowingly acquire, retain and possess a biological toxin, that is ricin, in its naturally occurring environment, that had not been extracted from its naturally source, that is, castor beans, for use as a weapon." Doc. No. 182, at ¶17.

Section 175(a) criminalizes the *knowing* possession of toxin in its naturally occurring environment for *use as a weapon*. 18 U.S.C. §175(a). A toxin is defined as "the toxic material or product of plants, animals, microorganism…whatever their origin and method of production." 18 U.S.C. §178. Ricin is plainly a toxin within the definition of Section 178 and nothing in

Sections 178 or 175 suggest that ricin would not be covered merely because it has not been extracted from its naturally occurring environment.

2. *Congress clearly delineated two different crimes in Sections 175(a) and 175(b).*

Congress created two separate crimes pursuant to Sections 175(a) and (b). Section 175(a) criminalizes the *knowing* possession of toxin in its naturally occurring environment for *use as a weapon*. 18 U.S.C. §175(a). By contrast, §175(b) specifically excludes possession of a toxin "in its naturally occurring environment, if the biological agent has not be cultivated, collected, or otherwise extracted from its natural source" and does not require the heightened "for use as a weapon" *mens rea* standard codified in §175(a). 18 U.S.C. §175(b).

By enacting Sections 175(a) and (b), Congress clearly distinguished between two forms of criminal behavior. Under §175(a), possession of a toxin in its naturally occurring state is only illegal when a person specifically intends to use such toxin as a weapon. Absent such specific intent, mere possession of a toxin in its naturally occurring state is not illegal. In contrast, §175(b), criminalizes the possession of only those biological toxins which have been "cultivated, collected, or extracted" from their natural occurring environment. 18 U.S.C. §175(b). Section 175(b) does not require that that such possession be intended for use as a weapon. Had Congress intended to exclude toxins in their naturally occurring state from §175(a), it would have included the §175(b)'s limiting language.

Defendant ADAMS does not dispute the above distinction, but instead relies on the fact that Section 178(b), with which he was not charged, contains an exception from the definition of "toxin" for materials that have not been extracted from their natural source. However, subsection (b) plainly states that this exception is limited to "this subsection" [i.e. section

5

175(b)]. If Congress had intended the exception to also apply to Section 175(a), it would have said "in this *Section*" rather than "in this *subsection*" or it would have expressly included the exception in subsection (a) as well.

The Supreme Court has repeatedly held that where Congress uses language in one part of a statue but omits it another, its choice to do so "should be given effect." *Jones v. Bock,* 549 U.S. 199, 222 (U.S. 2007). That is especially true where, as here, the language is omitted in the statute's very next subparagraph. *See Jama v. Immigration and Customs Enforcement,* 543 U.S. 335, 366-67 (U.S. 2005); *Sosa v. Alvarez-Machain,* 542 U.S. 692, 712 n.9 (U.S. 2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.") (internal quotation marks and citation omitted).

Congress created two definitions of "toxin" in 18 U.S.C. § 175 -one for use in section 175(a) and one for use in section 175(b). The only way to give effect to that Congressional choice is to hold that toxic materials must be "extracted" from their natural sources in order to be "toxins" for purposes of section 175(b) but do not have to be extracted in order to be "toxins" for purposes of section 175(a).

A broader definition of "toxin" in section 175(a) as compared to section 175(b) makes perfect sense within the statutory scheme. Section 175(a) imposes a strict *mens rea* requirement: the government must prove that the toxin was possessed "for use as a weapon." That requirement ensures that mere possession of castor or abrus seeds will not result in section 175(a) liability unless criminal intent is clear. Under section 175(b), in contrast, the government can prove a violation merely by showing that a person "knowingly possesses" a toxin "of a type

or in a quantity that, under the circumstances, is not reasonably justified by a prophylactic, protective, bona fide research, or other peaceful purpose." That comparatively lax *mens reas* requirement makes sense in cases where the defendant has already "cultivated, collected, or otherwise extracted [the toxin] from its natural source," because extracting a toxin from its natural source is often a step towards using it as a weapon.

Thus, Section 175(a) envisions charging a defendant with possession of a toxin possession of a toxin in its naturally occurring state and evidence of intent to use such a toxin as a weapon is legally sound and envisioned by statute. ADAMS relies on a subpart of the statute that he was not charged with and therefore his contention that Count Two is void for vagueness is without merit and should be denied.

   3. *Section 175(a) provides fair warning and is not arbitrarily applied*.

Section 175(a) is not unconstitutionally vague because it provides fair warning is not arbitrarily applied. The Supreme Court has interpreted the Due Process Clause to require that criminal prohibitions give a person of ordinary intelligence "fair warning" as to the range of impressible conduct, while establishing adequate guidelines to govern the exercise of prosecutorial discretion by the Executive Branch to avoid arbitrary and discriminatory enforcement. *See Grayned v. City of Rockford*, 408 U.S. 108-09 (1972).

A statute is not unconstitutionally vague if it defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited in a manner that does not encourage arbitrary and discriminatory enforcement. *United States v. Williams,* 553 U.S. 285, 304, (2008); *United States v. Waymer*, 55 F3d 564, 568 (11th Cir. 1995).

As explained above, sections 175(a) and (b) provide fair notice by devising two levels of criminal culpability. Absent a specific intent to use a toxin as a weapon, mere possession of biological toxins in their naturally occurring state is not prohibited. Thus, enforcement of §175(a) is limited to those factual circumstances where a person possesses toxin in their naturally occurring state with an illegal intent, i.e. to cause injury to another. A defendant would not be liable for mere possession of a toxin in its naturally occurring state. The heightened *mens* rea ensures that law will not be applied arbitrarily.

In addition, statutes that incorporate a specific intent level or heightened *mens rea*, like §175(a), reduce the potential for vagueness. "A statutory requirement that an act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware." *Waymer*, 55 F.3d at 568. A statutory requirement that an act must be accompanied by a specific intent shields its application from a vagueness objection because the statute provides fair warning.

To prevail on Count Two of the superseding indictment, the government must prove that the CRUMP and ADAMS possessed castor beans and had the specific intent to use the ricin toxin for use as a weapon. The indictment plainly alleges that the Defendants possessed the seeds in order to extract ricin and use it to kill people. *See* Doc. No. 182 at ¶¶ 6-15 ("Defendant ADAMS suggested attacking government buildings with toxins and killing government employees[]" and "defendant CRUMP and others….discussed defendant CRUMP's plan to produce ten pounds of ricin and disperse the ricin in several cities in the United States.").

8

Even if the statute were deemed to be vague under some construction of the "use as a weapon" requirement, that is certainly not the case here, where the indictment plainly alleges that the Defendants possessed the castor beans in order to extract ricin and use it to kill people. Someone who possesses ricin for the purpose of killing people, even though he has not yet extracted it from its natural source, cannot plausibly claim that he lacks fair warning that such conduct is illegal. The government will produce sufficient evidence for a jury to conclude that CRUMP and ADAMS possessed hundreds of castor beans for the specific purpose of extracting ricin from these beans and using the resulting substance as a weapon to kill or injure others.

4. The rule of lenity does not apply because the fair meaning of the statute is clear.

Lastly, Defendant ADAMS's argument that the rule of lenity should be applied to dismiss Count Two should be denied. *See* Doc. No. 202. Defendant argues that he "could not be on notice of what act he is charged with under Count 2 that is prohibited by the statute." *See Id*. at 5.

"The 'rule of lenity' as ordinarily applied reflects the law's insistence that a criminal statute provide 'fair warning . . . of what the law intends to do if a certain line is passed.'" *Dean v. United States*, 129 S. Ct. 1849, 1860 (2009) (citation omitted). "To invoke the rule, [a court] must conclude that there is a grievous ambiguity or uncertainty in the statute." *Id*. at 1855 (citation omitted).

In this case, the rule of lenity does not apply because there is no ambiguity regarding the meaning of any aspect of the criminal statute with which Defendant is charged. Count Two of the superseding indictment is not ambiguous. Count Two plainly charges the Defendants with possession of the biological toxin ricin, contained in castor beans, for use as a weapon. See Doc.

No. 182 at ¶ 17. As discussed at length above, Section 175(a) does not prohibit the possession of castor beans alone, but criminalizes such possession where the request specific intent to use the toxin as a weapon is also present. The statute and its application in Count Two is not ambiguous and accordingly, the rule of lenity should not be applied in this case.

## Conclusion

Defendant ADAMS' motions to dismiss Count Two of the superseding indictment should be denied. Defendant ADAMS was not unfairly prejudiced by the return of the superseding indictment. Moreover, Count Two of the superseding indictment is not void as it plainly charges ADAMS with possession of castor beans, a charge properly envisioned by Section 175(a).

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by filing same in the Court's electronic filing system, where it will be automatically served upon:

Barry Lombardo

Edward Tolley

Daniel Summer

Undersigned counsel also certifies that this motion has been prepared in Courier New 12 point font, in compliance with LR 5.1B, NDGa.

This 2nd day of January, 2014.

/S/ Jeffrey A. Brown
JEFFREY A. BROWN
ASSISTANT UNITED STATES ATTORNEY