IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA: | | |
| | : | |
| v. | : | CRIMINAL INDICTMENT |
| | : | No.: 2:11-CR-44-RWS |
| RAY H. ADAMS, | : | |
| | : | |
| and | : | |
| | : | |
| SAMUEL J. CRUMP | : | |
| | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

COMES NOW the United States of America, by Sally Quillian Yates, United States Attorney, and Jeffrey A. Brown, Assistant United States Attorney, Northern District of Georgia, and hereby file the Government's Sentencing Memorandum to assist the Court in resolving disputed Guideline issues and in imposing a reasonable sentence under 18 U.S.C. § 3553. For the reasons set forth below, the Government believes that both Defendants should receive a term of 20 years in custody, to be followed by a lifetime period of supervised release.

## BACKGROUND

Defendants ADAMS and CRUMP were charged in a three court superseding indictment with conspiring to possess and produce the biological toxin ricin for use as a weapon (Count One); possession of the biological toxin ricin in its naturally occurring form for use as a weapon (Count Two).  (Doc. 182).  ADAMS was also charged with attempted possession of a biological toxin for use as a weapon (Count Three).  Defendant ADAMS and CRUMP were found guilty of Counts One and Two after a two-week jury trial.  (Doc. 229).  ADAMS was acquitted on Count Three.  (*Id.*).

After Defendants' convictions, the United States Probation Office prepared Presentence Reports ("PSR").  The PSR calculates a final adjusted offense level of 43, which includes a 12-level enhancement pursuant to U.S.S.G. § 3A1.4 (the "terrorism enhancement"), because the offenses involved, or were intended to promote, a federal crime of terrorism. The terrorism enhancement also mandates that Defendants receive a criminal history category of VI, which is accurately reflected in the PSR.  *See* U.S.S.G. § 3A1.4(b).  With an offense level of 43 and a criminal history category of VI, Defendants have a Guidelines custody range of life.

## ARGUMENT

There are two issues related to the application of the Sentencing Guidelines that are in dispute. Both ADAMS and CRUMP object to the base offense level of 42 pursuant to U.S.S.G. § 2M6.1(a) and the 12-level enhancement pursuant to §3A1.4.

**I.    The Court Should Find that the base offense level is 42 pursuant to § 2M6.1(a) because the offenses of conviction were committed with the Intent to Injure the United States.**

Defendants CRUMP and ADAMS object to the PSR's conclusion that offenses were committed with the intent to injure the United States. ADAMS argues that statements he made during the April 16, 2011 meeting were "hypothetical in nature, taken out of context and did not constitute a threat to the government or to any individual." Adams PSR Objections at ¶ 227. Irrespective of defense counsel's characterizations of ADAMS's statements, his statements that government buildings should be made toxic and that government employees should be killed coupled with his actions support a finding that he had requisite intent to injure the United States.

CRUMP objects to the PSR calculation, arguing that the appropriate base offense level should be 20 pursuant to § 2M6.1(a)(4). Crump PSR Objections at ¶ 227. CRUMP concedes that trial evidence showed he talked about making and distributing ricin, but his counsel argues that there was no evidence that he made ricin or had the ability to carry out his plan to ricin. *Id.* CRUMP argues that his offense level should be 20 pursuant to

§ 2M6.1(a)(4)(B) because there is no evidence that he had the intent or ability to carry out the threatened harm. *Id.* However, CRUMP's argument ignores a plain reading of the guidelines section which requires that the offense did not involve any conduct evidencing an intent or ability to carry out the threat. In addition, § 2M6.1(a)(4)(B) should not be applied to Defendant's convictions because Defendants were convicted of possessing a biological toxin and pursuant to Application Note 2 , possession of the weapon, agent, or material is conduct evidencing an intent to use. App. Note 2, U.S.S.G. § 2M6.1.

Contrary to the Defendants' objections, the evidence admitted at trial and cited in the PSR, establish that Defendants conspired to possess and possessed the biological toxin ricin for use as a weapon with the intent to injure the United States and 42 is the appropriate base offense level. Both ADAMS and CRUMP attended meetings where there were discussions about forming a covert militia group to kill United States government law enforcement officers and employees. Specifically, during the April 16, 2011, Frederick Thomas made multiple statements about targeting and killing government officials, specifically federal judges and Department of Justice, ATF, and IRS employees. Adams PSR ¶ 31. During the same meeting, ADAMS stated that government buildings should be "made toxic" and that people in government buildings should be the first people to die. *Id.* at ¶ 32. Toward the end of the meeting, Frederick Thomas asked who was committed to

taking action and ADAMS responded, "I am" and offered his property for the group to train. *Id.* In addition to statements of intent to target U.S. government officials, ADAMS also took substantial steps to implement such plans, including: ordering castor beans, cultivating castor beans, storing large quantities of castor beans, obtaining ingredients to extract ricin from castor beans, and obtaining a recipe that details method of extracting ricin from castor beans. Evidence adduced a trial showed that ADAMS successfully extracted ricin from the castor beans – the mason jars recovered from ADAMS's property contained a substance that tested positive for ricin. *Id.* at ¶¶ 119-124,191-192.

Similarly, CRUMP's statements and actions support the base offense calculation of 42 pursuant to § 2M6.1(a)(1), because his actions were undertaken with the intent to "injure the United States." On both September 17, 2011 and October 6, 2011, CRUMP stated that he was interested in spreading pounds of ricin on the roadways in several U.S. cities to kill people. Crump PSR at ¶ ¶ 64-69, 81-84. On October 6, 2011, CRUMP specifically discussed dispersing ricin in Washington, D.C. and Atlanta. *Id.* at 83.[1] Crump discussed dropping ricin on Washington D.C. from an airplane. Crump PSR at ¶ 83. Crump also discussed dropping ricin on a roadway and allowing the wind to disperse it

---

[1] Crump stated that he would not do anything in D.C. yet because there was still to many innocent people, but would disperse ricin in Atlanta "tomorrow." *See* Crump PSR ¶ 83. However after making this statement, CRUMP explained different ways to disperse ricin in Washington, D.C. *Id.*

into populated areas and specifically stated, "just think, put all that shit (ricin) out, and it starts goin' towards Washington, peoples starts kicking the bucket like that, you're talking about a red flag buddy." Crump PSR ¶83.

In addition, CRUMP took substantial actions to effectuate his plans. For example, CRUMP shelled castor beans at his residence, stored a large bag of castor beans at his storage shed, obtained a recipe for extracting ricin from castor beans, obtained supplies required by the ricin recipe, including a blender and rubber gloves. Crump PSR ¶ 94, 118, 125-126. Crump's research on government targets in Georgia and of chemicals believed to allow absorption of ricin through the skin is additional evidence of his intent to use ricin. *Id.* at 125. The Defendants' statements and actions establish that they conspired to possess and possessed the biological toxin ricin for use as a weapon with the intent to injure the United States and pursuant to § 2M6.1(a)(1) the Defendants base offense level should be 42.

## II. The Court Should Find that the Terrorism Enhancement Pursuant to § 3A1.4(a) applies to Defendants' convictions and does not result in impermissible "double counting."

Defendants argue that applying § 3A1.4 is improper and ADAMS specifically argues that applying the enhancement is double-counting in the instant case. As discussed above, the facts of the instant case support the application of the terrorism enhancement. Additionally, Eleventh Circuit authority does not support ADAMS' claim of double

counting.  "Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines."  *United States v. Dudley*, 463 F.3d 1221, 1226-27 (11th Cir. 2006) (internal quotation marks omitted).  Indeed, double counting a factor during sentencing "is permitted if the Sentencing Commission . . . intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing."  *United States v. Stevenson*, 68 F.3d 1292, 1294 (11th Cir. 1995).  Courts are thus to presume that "the Commission intended to apply separate guideline sections cumulatively unless specifically directed otherwise."  *Id.*; accord *United States v. Perez*, 366 F.3d 1178, 1183 n.6 (11th Cir. 2004) (citing *United States v. Box*, 50 F.3d 345, 359 (5th Cir. 1995) ("Double counting is prohibited only if the particular guidelines at issue forbid it.")).

Applying the terrorism enhancement in conjunction with § 2M6.1(a)(1) does not result in impermissible double counting.  As a district court recognized, "because terrorist acts are not always intended to injure the United States or to aid a foreign terrorist organization, and plots to injure the United States or aid a foreign terrorist organization do not always involve acts of terror."  *United States v. Cromitie*, No. 09 Cr. 558 (CM), 2011 U.S. Dist. LEXIS 108593, at *16 (S.D.N.Y. June 29, 2011).  Thus, the terrorism enhancement and the conduct it targets are not "fully accounted for" by application of §

2M6.1. *See, e.g.*, *United States v. Phillips*, 363 F.3d 1167, 1169 (11th Cir. 2004) (enhancement for violation of a court order not impermissible double counting after conviction for failure to pay court-ordered child support because base offense level applied to a variety of crimes, not all of which involved violation of a court order); *United States v. Naves*, 252 F.3d 1166, 1168-69 (11th Cir. 2001) (enhancement for carjacking not double counting after conviction for carjacking because base offense level applied to all robbery crimes). Moreover, there is no language in either § 2M6.1 or § 3A1.4 directing that the sections not be applied cumulatively; the Court must therefore presume the Commission intended for them to apply together. *See Stevenson*, 68 F.3d at 1294. Applying the terrorism enhancement does not result in impermissible double counting, and ADAMS objection on this point should fail.

## III.     REASONABLE SENTENCE.

As stated above, the government believes that a term of 20 years in custody is a reasonable sentence for both Defendants. To assist the Court in imposing a reasonable sentence under 18 U.S.C. § 3553, the Government submits the following for the Court's consideration.

### A.     The nature and circumstances of the offense and the history and characteristics of the defendants.

As discussed in detail in the PSR and above, the nature and circumstances of the offense support the government's request for a 20-year sentence. The Defendants made

numerous statements expressing displeasure with the United States government and discussed plans to kill innocent people and making government buildings toxic. The Defendants amassed a large collection of castor beans, ricin recipes and supplies necessary to extract ricin from castor beans. Moreover, Defendant ADAMS successfully extracted ricin from castor beans and stored ricin in mason jars containing fruit preserves.

However, the government also recognizes that there are unique nature and circumstances of the instant case and factors that support a sentence below the Guidelines. The Defendants' age and lack of any significant criminal history supports the government's below-Guideline sentence recommendation. CRUMP is 71 years old and has a minimal criminal history stemming from a 1959 burglary charge and a 1975 illegal manufacturing liquor charge. ADAMS is 58 and has no criminal history. Therefore, given the nature and circumstances of the offense, a term of 20-years' imprisonment is an appropriate and reasonable sentence.

> **B.** **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense and to afford adequate deterrence to criminal conduct and the need for the sentence imposed to protect the public from further crimes of the Defendants.**

As discussed above, Defendants crimes are serious and the sentence imposed by this Court must reflect that Defendants were convicted of both conspiring and possessing ricin, a dangerous and potentially fatal biological toxin, for use a weapon. The sentence should

also promote respect for the law, especially given the Defendants advocated an idea dangerous to our democracy – that violence aimed at the government is justifiable when citizens grow frustrated with political candidates or government policies. Instead of participating in our democracy and supporting elected officials that espoused the Defendants' views, they believed that attacks on citizens and government were justified. Finally, given the gravity of their crimes and the threat that they posed, deterrence and protection should weigh heavily in determining a reasonable sentence and the government believes that a term of 20 years is sufficient to achieve these goals.

### C. Need to Avoid Unwarranted Sentencing Disparities.

The government is requesting a sentence below the Guidelines Range in order to avoid unwanted sentencing disparities. Although Thomas and Roberts were not involved in CRUMP's and ADAMS' ricin plot and pled guilty pursuant to a plea agreement, Thomas and Roberts did undertake steps to target government buildings and officials and obtain materials to conduct an attack. The government is recommending a 20-year sentence recognizing that a advocating for a life sentence against Crump and Adams will appear discordant with the 60 months Thomas and Roberts received. However, the government believes that a 20-year sentence does not create unwarranted sentencing disparities because: (1) Defendants and Thomas and Roberts were not found guilty of similar conduct; (2) Defendants had amassed necessary ingredients and supplies to extract

ricin; (2) Defendants discussed plans to use ricin to kill innocent people and government employees; (3) The Defendants' ricin recipe, dated February 16, 2010, suggests that one or both of the Defendants had an interest in producing ricin at least one year before the FBI's first contacts with them; and (4) Defendants did not accept responsibility and plead guilty.

## CONCLUSION

For the reasons stated above, Defendants' Guidelines objections should be overruled and they should be sentenced to a term of 20 years in prison, to be followed by a lifetime term of supervised release.

Respectfully submitted,

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY


/s/JEFFREY A. BROWN
ASSISTANT UNITED STATES ATTORNEY

600 U.S. Courthouse
75 Spring St., S.W.
Atlanta, GA  30303
(404)581-6292
(404)581-6181 (Fax)

Georgia Bar No. 088131
Jeff.A.Brown@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served via the CM/ECF system which will automatically send email notification of such filing to the following attorney(s) of record:

      Daniel A. Summer

      Barry Lombardo

This 13th day of November, 2014.

                      /s/JEFFREY A. BROWN
                      ASSISTANT UNITED STATES ATTORNEY